[¶1] This matter came before the Court upon the Board of Professional Responsibility's "Report and Recommendation for 30-Day Order of Suspension," filed herein February 1, 2019. After a careful review of the Report and Recommendation and the file, the Court finds the Report and Recommendation should be approved, confirmed and adopted *454 by the Court, and that Donald L. Tolin should be suspended from the practice of law for 30 days. It is, therefore,
[¶2] ADJUDGED AND ORDERED that the Board of Professional Responsibility's Report and Recommendation for 30-Day Order of Suspension, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further
[¶3] ADJUDGED AND ORDERED that, as a result of the conduct set forth in the Report and Recommendation for 30-Day Order of Suspension, Respondent Donald L. Tolin shall be, and hereby is, suspended from the practice of law for a period of 30 days, with the period of suspension to begin on April 1, 2019; and it is further
[¶4] ORDERED that, during the period of suspension, Respondent shall comply with the requirements of the Wyoming Rules of Disciplinary Procedure, particularly the requirements found in Rule 21 of those rules; and it is further
[¶5] ORDERED that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Respondent shall reimburse the Wyoming State Bar the amount of $5,471.54, representing the costs incurred in handling this matter, as well as pay the administrative fee of $750.00. Respondent shall pay the total amount of $6,221.54 to the Wyoming State Bar on or before June 20, 2019. If Respondent fails to make payment in the time allotted, execution may issue on the award; and it is further
[¶6] ORDERED that the Clerk of this Court shall docket this Order of 30-Day Suspension, along with the incorporated Report and Recommendation for 30-Day Order of Suspension, as a matter coming regularly before this Court as a public record; and it is further
[¶7] ORDERED that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order of 30-Day Suspension, along with the incorporated Report and Recommendation for 30-Day Order of Suspension, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further
[¶8] ORDERED that the Clerk of this Court cause a copy of this Order of 30-Day Suspension to be served upon Respondent Donald L. Tolin.
[¶9] DATED this 20th day of March, 2019.
BY THE COURT:
/s/ MICHAEL K. DAVIS
Chief Justice
Attachment
*455 BEFORE THE SUPREME COURT STATE OF WYOMING In the matter of DONALD L. TOLIN, WSB # 5-1699, WSB No. 2017-037 Respondent.
REPORT AND RECOMMENDATION FOR 30-DAY ORDER OF SUSPENSION
THIS MATTER came before the Board of Professional Responsibility of the Wyoming State Bar (the "Board") on January 14 and 15, 2019, for a disciplinary hearing pursuant to Rule 15(b), W.R.Disc.P. A quorum of five members of the board was in attendance. The Wyoming State Bar was represented by Bar Counsel, Mark W. Gifford. Respondent was present in person and represented himself. Bar Counsel's Exhibits BC-1 (consisting of numbered pages OBC-001 through OBC-151) and BC-2 were received into evidence, as were Respondent's exhibits, which filled three (3) three-ring binders.
Based upon the exhibits received into evidence, the testimony of witnesses and with due consideration given to the statements of counsel, the Board unanimously FINDS, CONCLUDES and RECOMMENDS as follows:
Findings of Fact
1. This matter arises from a complaint against Respondent, a Casper lawyer who was admitted to practice in 1978, which was submitted in March 2017 by Respondent's client, Brandon MacManus of Casper.
2. MacManus is the father of a daughter born in May 2012 to Haley Hansen. In September 2014, MacManus filed apro se petition to establish paternity, custody and child support *456 for his daughter. MacManus and Hansen were both self-represented at a hearing held in the matter before Judge Sullins in February 2015. Citing a lack of proof by either party, Judge Sullins declined to order child support or render a paternity determination. Judge Sullins ordered custody to remain with the mother.
3. On March 4, 2015, MacManus hired Respondent to represent him in the paternity matter. He paid Respondent a $2,000.00 retainer and signed a Legal Services Fee Agreement. Respondent filed an entry of appearance the next day.
4. For more than a year after entering his appearance in the paternity matter, Respondent did nothing to move the matter forward. During this time, MacManus had no contact with his daughter as the daughter's mother denied visitation. Notably, at no time did Respondent seek a temporary order to allow Respondent to have visitation with his daughter.
5. When seventeen months passed with no apparent progress in the matter, MacManus communicated to Respondent on August 9, 2016, that he had "decided to go a different direction" (he had decided to hire a different attorney) and requested his file. On August 16, 2016, having heard nothing from Respondent, MacManus made another request for his file and was told by Respondent that Respondent had filed something in the paternity action, according to MacManus, "without my consent."
6. On August 19, 2016, Respondent filed a "Second Petition to Establish Visitation, Child Support and First Petition for Modification of Child Custody."[1] On October 11, 2016, Casper lawyer Zak Szekely filed an answer on Hansen's behalf.
7. Nothing further was filed in the matter until April 2017, when Szekely informed Respondent that he was going to file a motion to dismiss MacManus's petition for lack of substantial action. This prompted Respondent to file a request for a trial setting on April 18, 2017.
*457 Szekely filed a motion to dismiss for lack of substantial action on the same day. During the six months that passed between the filing of the second petition and the filing of Szekely's motion, Respondent did nothing to move the matter forward. As a result, MacManus continued to be deprived of visitation with his daughter.
8. In the meantime, MacManus submitted a complaint to Bar Counsel on March 20, 2017, complaining about Respondent's lack of diligence and requesting, "Revocation of license, from what I've heard I'm not the only person this happened w/."
9. In his initial response to the complaint, Respondent denied that he had violated any rule of professional conduct. Bar Counsel requested that Respondent produce copies of pleadings and relevant correspondence with Hansen's counsel. Respondent did so via a letter dated April 22, 2017. Upon review of the documents produced by Respondent, Bar Counsel determined to put the investigation on hold pending resolution of the underlying paternity action, and so advised Respondent and MacManus via letters dated May 3, 2017.
10. On June 14, 2017, a hearing on Szekely's motion to dismiss was held before Judge Sullins. Judge Sullins denied the motion to dismiss and set the matter for hearing on August 15, 2017. At the hearing, Respondent informed Judge Sullins that it was likely the case would settle.
11. On July 24 and 25, 2017, Respondent and Szekely exchanged emails regarding settlement options. These email communications ended with Szekely sending the following to Respondent:
*458 I would opine that the chances of your client succeeding in obtaining custody are less than slim and pretty close to none. He has had no contact with this child, he has not attempted to contact or support this child, now you are asking for visitation without any proper finding of paternity nor payment of any support obligation. This child has a man in her life that supports her financially and emotionally, you client has not even tried to do either of those, while my client has offered visitation, you now threaten to take the child away from her. We have made our offer, it stands for now though it will be rescinded fairly quickly if this continues.
Further client has not filed a CFA [Confidential Financial Affidavit], nor had he offered anything under W.R.C.P. 26(a)(1.2)(A) that he has a claim to obtain custody. Further under W.R.C.P. 26(a)(1.3) those disclosures must be made 30 days after my client was served, this has not occurred. So, we will have a hearing without any witnesses other [than] your client and my client, there will be no exhibits, and absolutely no evidence that your client is even the biological father, other than a birth certificate. There isn't even an acknowledgment of paternity in the file. The offer will expire on Thursday at 5:00.
12. On August 15, 2017, the parties and their counsel were present in Judge Sullins' court for the scheduled trial. Before the trial commenced, Respondent asked Judge Sullins if the parties might have some time to discuss settlement. Judge Sullins acquiesced, and an agreement in principle was made to allow MacManus supervised visitation for a period of time until, in the opinion of the daughter's counselor, unsupervised visitation could begin. Other terms of the settlement were discussed and agreed upon and the trial did not go forward. It was Respondent's task to draft a stipulated order consistent with the settlement agreement. As discussed below, it would take Respondent more than six months to complete this relatively simple task.
13. On November 15, 2017, Bar Counsel wrote to Respondent and requested an update as to case status. Respondent responded via email on November 29, 2017, stating, "Mark per your request for an update in this matter, please note that the parties, through counsel, reached a stipulated agreement in this custody matter. We have been working with the child's individual therapist/counselor to transition with visitations for my client with his daughter. My client advised me at our last hearing that he wanted to withdraw his complaint."
14. On January 19, 2018, Bar Counsel sent another status request to Respondent. He responded via email on February 3, 2018:
*459 Sorry I am sending this to you so late this afternoon. I am still out of state, and have been since you sent me your last letter to my office, regarding this matter. I'm trying to run down the paperwork so that I can forward it to you for your review, but I have not had much luck. As soon as I do, I will send you a copy of the paperwork. Basically my client gets standard visitation rights as transitioned through his daughter's individual counselor whom we agreed for my client to meet with to assist in the transitioning process. We also stipulated to past and present child support.
As of the date of this communication, Respondent still had not drafted the stipulated order, though more than five months had passed since the August 15, 2017, hearing at which settlement was reached.
15. On February 19, 2018, more than six months after the August 15, 2017, hearing date, Respondent transmitted a draft stipulated order to his client and to Szekely.
16. On April 13, 2018, MacManus contacted Bar Counsel and indicated that he wanted to withdraw his complaint against Respondent. Bar Counsel responded with a letter informing MacManus that the procedural rules for lawyer discipline provide that disciplinary investigations may go forward despite the complainant's subsequent decision not to proceed with the complaint. Bar Counsel informed MacManus that he intended to proceed with the investigation.
17. On May 8, 2018, Bar Counsel filed the Formal Charge in this proceeding, alleging violations by Respondent of Rule 1.3 (diligence), Rule 1.4 (communication with client) and Rule 3.2 (duty to expedite litigation), W.R.Prof.Cond.
18. With minor changes to the order Respondent drafted and transmitted on February 19, 2018, the Stipulated Order Establishing Paternity, Visitation, Child Support, Medical Support, and Modification of Child Custody was signed by Judge Sullins and filed on May 14, 2018 - more than three years after MacManus retained Respondent to represent him in the matter. When the paternity action was originally filed by MacManus in 2014, his daughter was two years old. The stipulated order was entered shortly after her sixth birthday.
19. Bar Counsel has proven, by clear and convincing evidence, numerous violations by Respondent of Rule 1.3 (diligence) in Respondent's representation of MacManus. MacManus's *460 interests in being involved in his daughter's upbringing were adversely affected by the passage of more than three years between his retention of Respondent and the ultimate resolution of the case. Respondent's unreasonable delay in moving the case forward caused his client needless anxiety and undermined the client's confidence in Respondent's trustworthiness. Virtually throughout the underlying proceeding, Respondent demonstrated a lack of commitment and dedication to the interests of his client and failed to advocate zealously on his client's behalf. The time records produced by Respondent in discovery and received into evidence at the hearing show several periods of months passing with no action by Respondent to move the case forward.
20. Bar Counsel has also proven, by clear and convincing evidence, numerous violations by Respondent of Rule 1.4 (communication with client) in Respondent's representation of MacManus. Respondent failed to reasonably consult with the client about the means by which the client's objectives were to be accomplished, including most notably the filing of the second petition after MacManus had requested the return of his file. Although Respondent testified that he believed MacManus was amenable to an "open adoption" by the mother's husband, MacManus was adamant that a resolution of that sort was never acceptable to him. Respondent also failed to comply with MacManus's reasonable requests for information.
21. Bar Counsel has also proven, by clear and convincing evidence, numerous violations by Respondent of Rule 3.2 (duty to expedite litigation) in Respondent's representation of MacManus. There is simply no excuse or justification for Respondent taking more than three years to obtain a resolution of the underlying paternity action.
22. With respect to the appropriate sanction for Respondent's misconduct, and applying the four-factor analysis of Rule 15(b)(3)(D), the Board finds that in committing multiple violations of Rules 1.3 and 1.4, Respondent violated duties owed to a client. Respondent knowingly failed to perform services for his client and caused substantial injury to his client. Further, Respondent *461 engaged in a pattern of neglect with respect to MacManus's case. These findings point to a suspension as the presumed sanction pursuant to Standard 4.42 of the ABA Standards for Imposing Lawyer Sanctions.
23. In failing to expedite the litigation as required by Rule 3.2, Respondent violated a duty owed to the legal system. In his representation of MacManus, Respondent knowingly failed to adhere to the requirements of the rules of civil procedure and caused substantial injury to his client. This finding indicates that a suspension is the presumed sanction pursuant to Standard 6.22 of the ABA Standards.
24. With respect to Respondent's mental state, the Board finds that Respondent acted with knowledge, i.e., with conscious awareness of the nature and attendant circumstances of his conduct.
25. With respect to the injury inflicted upon MacManus by Respondent's conduct, the Board finds that MacManus suffered substantial injury associated with not being able to have contact with his daughter for a period of more than two years.
26. With respect to aggravating factors, the Board finds (a) a pattern of misconduct; (b) multiple offenses; (c) outright refusal by Respondent to acknowledge the wrongful nature of his conduct; (d) extreme vulnerability of the victim; and (e) substantial experience in the practice of law.
27. With respect to mitigating factors, the Board finds (a) absence of a prior disciplinary record and (b) absence of a dishonest or selfish motive.
28. The Board finds that MacManus's withdrawal of his complaint against Respondent is a factor that is neither aggravating nor mitigating.
29. Considering all of the foregoing findings, the Board finds that a 30-day suspension is an appropriate sanction for Respondent's misconduct.
*462 Conclusions of Law
30. Rule 1.3, W.R.Prof.Cond., provides, "A lawyer shall act with reasonable diligence and promptness in representing a client."
31. Comment [1] to Rule 1.3 provides:
A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf. A lawyer is not bound, however, to press for every advantage that might be realized for a client. For example, a lawyer may have authority to exercise professional discretion in determining the means by which a matter should be pursued. See Rule 1.2. The lawyer's duty to act with reasonable diligence does not require the use of offensive tactics or preclude the treating of all persons involved in the legal process with courtesy and respect.
32. Comment [3] to Rule 1.3 provides:
A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf. A lawyer is not bound, however, to press for every advantage that might be realized for a client. For example, a lawyer may have authority to exercise professional discretion in determining the means by which a matter should be pursued. See Rule 1.2. The lawyer's duty to act with reasonable diligence does not require the use of offensive tactics or preclude the treating of all persons involved in the legal process with courtesy and respect.
33. Rule 1.4(a), W.R.Prof.Cond., provides:
(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in 1.0(f), is required by these Rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and *463 (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.
34. Rule 3.2, W.R.Prof.Cond., provides, "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."
35. Rule 15(b)(3), W.R.Disc.P., provides in relevant part:
At the hearing, the BPR shall first receive evidence regarding whether a violation of the Wyoming Rules of Professional Conduct occurred. When all evidence on that issue has been received, the BPR shall recess to determine whether a violation has been proved by clear and convincing evidence.
* * *
(C) If the BPR determines by a majority of a quorum that there has been a violation, the BPR shall then receive evidence of aggravating or mitigating circumstances before determining the appropriate discipline for the violation. Evidence of prior discipline against the respondent shall be admissible in the second phase of the hearing regarding the appropriate discipline to be ordered or recommended.
(D) In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions, which standards shall be applied by the BPR in determining the appropriate sanction:
(i) Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;
(ii) Whether the lawyer acted intentionally, knowingly, or negligently;
(iii) The amount of the actual or potential injury caused by the lawyer's misconduct; and
(iv) The existence of any aggravating or mitigating factors.
36. With respect to costs of disciplinary proceedings, Rule 25, W.R.Disc.P., provides:
Rule 25. Expenses and Costs.
(a) The expenses of members of the BPR, the ROC, Bar Counsel, and Special Bar Counsel, costs of a Disciplinary Judge, and other expenses incurred in the implementation or administration of these rules, shall be paid with funds allocated for that purpose by the Wyoming State Bar. The Wyoming State Bar shall compensate and pay the expenses of Disciplinary Judges.
*464 (b) In addition to any costs assessed by the BPR, the ROC or the Court, an administrative fee of seven hundred fifty dollars ($750.00) shall be imposed by the BPR in all cases where private discipline, diversion, or public discipline is ordered. The administrative fee shall be assessed on a per-complaint basis.
(c) Costs means actual expenses incurred by Bar Counsel, the ROC, the BPR, and the Wyoming State Bar in connection with a disciplinary proceeding, reinstatement proceeding or diversion program, including without limitation the cost of depositions used in a proceeding, hearing transcripts, copying costs, conference call and other telephone expenses, fees for service of process and subpoenas, witnesses fees, fees paid to expert witnesses, and costs associated with travel, meals and lodging for the ROC, the BPR, the BPR Clerk and the Office of Bar Counsel.
(d) When an attorney is privately disciplined, the BPR or the ROC may assess against the attorney the costs incurred in connection with the investigation and disciplinary proceeding, together with the administrative fee.
(e) When public discipline is recommended by the BPR, it shall certify to the Court the costs incurred in connection with the investigation and disciplinary proceeding, together with the administrative fee. The BPR may recommend to the Court the assessment of those costs and, if the Court imposes discipline, the Court may assess all or any part of the certified costs, together with the administrative fee, against respondent.
(f) In any case where costs and fees are assessed, they shall be paid to the Wyoming State Bar.
37. Rule 26(f), W.R.Disc.P., provides:
Refusal of Complainant to Proceed; Compromise; or Restitution. Abatement of an investigation into the conduct of a lawyer or other related proceedings shall not be required by the unwillingness or neglect of the complainant to cooperate in the investigation, or by any settlement, compromise or restitution. A lawyer shall not, as a condition of settlement, compromise or restitution, require the complainant to refrain from filing a complaint, to withdraw the complaint, or to fail to cooperate with the Bar Counsel.
38. The preamble to the ABA Standards for Imposing Lawyer Sanctions (the "ABA Standards") includes the following discussion regarding mental state:
The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.
39. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from `serious' injury to `little or no' injury; a reference to `injury' alone indicates any level of injury greater than `little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."
40. Respondent's violations of Rules 1.3 and 1.4 call into play ABA Standard 4.4, "Lack of Diligence," of the ABA Standards. Standard 4.4 sets forth the following guidelines:
4.41 Disbarment is generally appropriate when:
(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
(b) a lawyer knowingly fails to perform services for a client and cause serious or potentially serious injury to a client; or
(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.
4.42 Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or
(b) a lawyer engages in a pattern of neglect with respect to client matters and causes injury or potential injury to a client.
4.43 Reprimand [i.e., public censure under Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.
4.44 Admonition [i.e., private reprimand under Rule 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes little or no actual or potential injury to a client.
41. Respondent's violation of Rule 3.2 implicates Standard 6.2, "Abuse of Legal Process," of the ABA Standards. Standard 6.2 sets forth the following guidelines:
*465 Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to expedite litigation or bring a meritorious claim, or failure to obey any obligation under the rules of the tribunal except for an open refusal based on an assertion that no valid obligation exists:
6.21 Disbarment is generally appropriate when a lawyer knowingly violates a court order or a rule with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.
6.22 Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.
6.23 Reprimand [i.e., public censure under Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.
6.24 Admonition [i.e., private reprimand under Rule 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order or rule, and causes little or no actual or potential injury to a party, or causes little or no actual or potential interference with a legal proceeding.
42. ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:
9.1Generally
After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.
9.2Aggravation
9.21 Definition. Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.
9.22 Factors which may be considered in aggravation. Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
*466 (i) substantial experience in the practice of law;
(j) indifference in making restitution; and
(k) illegal conduct, including that involving the use of controlled substances.
9.3Mitigation
9.31 Definition. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.
9.32 Factors which may be considered in mitigation. Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
*467 (i) mental disability or chemical dependency including alcoholism or drug abuse when:
(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
(2) the chemical dependency or mental disability caused the misconduct;
(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse; and
(m) remoteness of prior offenses
9.4Factors Which Are Neither Aggravating nor Mitigating
The following factors should not be considered as either aggravating nor mitigating:
(a) forced or compelled restitution;
(b) agreeing to the client's demand for certain improper behavior or result;
(c) withdrawal of complaint against the lawyer;
(d) resignation prior to completion of disciplinary proceedings;
(e) complainant's recommendation as to sanction; and
(f) failure of injured client to complain.
*468 Recommendation
Based upon the foregoing findings and conclusions, the Board recommends that the Court issue an order of 30-day suspension to Respondent as provided herein; that Respondent be required to pay an administrative fee of $750.00 as provided in Rule 25(b), W.R.Disc.P.; and that Respondent be required to reimburse the Wyoming State Bar for certified costs of this proceeding as provided in Rule 25(e), W.R.Disc.P.
Dated this 21 st day of January, 2019.
__________________________________________ Jeffrey A. Donnell, Chair Board of Professional Responsibility Wyoming State Bar